UNITED STATES

v.

Private First Class Dale M. RUSSELL, 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, US Army, Battery A, 2d Battalion, 4th Field Artillery, 9th Infantry Division, Fort Lewis, Washington.

SPCM 11350.

U. S. Army Court of Military Review.

Sentence Adjudged 25 March 1975.

Decided 20 Nov. 1975.

---

Appearances: Appellate counsel for the Accused: CPT Peter V. Train, JAGC; CPT Robert D. Jones, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC.

Appellate counsel for the United States: CPT John F. Schmutz, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DeFORD, Judge:

At trial by special court-martial before military judge alone, the appellant pleaded guilty to, and was found guilty of wrongful possession of amphetamines with the intent to distribute in violation of 21 U.S.C. § 841 and wrongful possession of marijuana, all in violation of Article 134, Uniform Code of Military Justice (10 U.S.C. § 934). He received the sentence as outlined above.

The appellant, through counsel, raises as error the providency of the appellant's plea of guilty to the specification concerning possession of marijuana.

Following the military judge's acceptance of the appellant's plea and his finding that the appellant was guilty of the foregoing charges, the appellant made a sworn statement in extenuation and mitigation of punishment. Upon cross-examination by the trial counsel, the following colloquy occurred on the record:

"Q. Why did you just seek help in December of last year? Why didn't you try to get some help prior to that?

A. Well, until I got in trouble, I didn't realize that I needed help; I didn't feel I needed it. I mean, that was one of the things that drugs did to me. I didn't even realize that they were tearing me down so bad.

Q. Well, when did you make this decision? On the 8th of December or thereafter when you got picked up?

A. A few days after that—after December 8th—after the incident had happened, I decided to quit drugs, and I was having a rough time with it.

Q. Okay. Why did you happen to get caught a month later—just about a month later on the 6th of January with marijuana tucked inside your pantleg?

A. Well, like Captain Baxendale said, I had been working, you know, working with CID through Captain Drinkwater, my Battery Commander. Okay, he told me that I should build up my reliability with PFC Miller.

Q. Did he tell you you were supposed to continue using drugs?

A. No, he didn't. He said I could make a buy and turn it in to him.

Q. You've been convicted of possessing amphetamines and intending to distribute those. Was that for a profit or monetary gain?

A. No, sir, it was to support my own habits.

Q. So what did you do? Buy and make enough so that you could continue supporting your own needs?

A. Yes, sir.

## EXAMINATION BY THE COURT

*Questions by the military judge:*

Q. Well, when you had the marijuana the second time—when you were talking to Captain Mason, did you mean to infer that someone asked you to carry marijuana—

A. No, sir.

Q. —so that you could build up your confidence with him?

A. No, sir. He just told me to build up my—I can't remember the exact word he used.

DC. May I suggest 'credibility.' Would that be—

WIT. Credibility—right. And that I should make a buy, and that I didn't have to use it myself, that I could turn it in to him—to Captain Drinkwater.

Q. Well, what did you actually do with respect to this possession of marijuana? I'm speaking of the second offense.

A. Right, sir. I bought some marijuana from Miller.

Q. Okay. And why did you buy it from him?

A. To build up my credibility.

Q. Well, did you have authority to buy this marijuana?

A. No, sir.

Q. Well, what did you do with it after you bought it?

A. I—about fifteen minutes after I bought it, Lieutenant Dunlap came into my room and told me that I was—

Q. You were busted?

A. —detained. Right—busted."

The foregoing testimony clearly raised the issue of whether the appellant's possession of marijuana was lawful.

■ The responsibility for accepting a plea of guilty is that of the military judge and such a plea should only be accepted after a searching inquiry.[1]

Article 45(a), UCMJ, 10 U.S.C. § 845(a) provides in part: "If an accused . . . after a plea of guilty sets up matter which is inconsistent with the plea, . . . a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."

■ In the case before us, the appellant's responses to the trial counsel and the military judge raise the question of a defense of lawful possession. It was then incumbent upon the military judge to make a more searching inquiry to determine the accused's position on the apparent inconsistency.[2]

The military judge recognized the inconsistency raised by the appellant's responses. However, as heretofore noted, the military judge merely asked the appellant if he was authorized to make the purchase. The appellant's responses that he was not so authorized was inconsistent with the previous response he had given to the trial counsel to the effect that his battery commander had told him he could make a "buy" and turn it into him (battery commander). In addition the appellant stated that he made the purchase of the marijuana about fifteen minutes prior to being apprehended. The obvious implication being that the accused had not had the opportunity to inform the company commander and turn in the marijuana. The military judge did not inquire further into the matter.

■ Inconsistency between what is charged and pled with what is presented at trial will invalidate the plea.[3]

The military judge's subsequent inquiry was not adequate and it did not resolve the apparent inconsistency.[4]

In view of the foregoing the Court has the option of returning this case to the convening authority for a rehearing or by setting aside the findings of guilty as to the Additional Charge and its specification and reassessing the sentence in light of the error and prejudice to the appellant resulting therefrom. In the interest of justice and in limiting the length of litigation, we deem it appropriate to terminate the litigation at this level. The findings of guilty of the Additional Charge and its specification are set aside and the charge is dismissed. The remaining findings of guilty are affirmed.

■ Reassessing the sentence on the basis of the above-indicated error, our action

1. *United States v. Timmins*, 21 U.S.C.M.A. 475, 45 C.M.R. 249 (1972); *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

2. *United States v. Timmins, supra.*

3. *United States v. Roby*, 23 U.S.C.M.A. 295, 49 C.M.R. 544, 546 (1975).

4. The quoted testimony is capsulated in the staff judge advocate's post-trial review as follows:

"Upon questioning by the military judge, the accused stated that he bought marijuana from PFC Miller on 6 January 1975 in order to build up his credibility with PFC Miller. He was not authorized by anyone to buy the marijuana, but indicated that CPT Drinkwater had previously suggested making a buy to reinforce his credibility. He was detained for possession of marijuana about 15 minutes after making a buy."

Consequently, even if this issue were not squarely framed in the record, which we believe it is, this summarization would dictate the result we have reached. *United States v. Lemieux*, 10 U.S.C.M.A. 10, 27 C.M.R. 84 (1958).

herein, and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge (suspended for the period of confinement and six months thereafter at which time, unless the suspension is sooner vacated, the suspended portion shall be remitted without further action), confinement at hard labor for two months, forfeiture of $175.00 pay per month for two months, and reduction to the grade of Private E–1.

Senior Judge BAILEY and Judge COOK concur.