**UNITED STATES, Appellee,**

v.

**Private El Manuel RIOS, 119–48–2574, United States Army, Appellant.**

**ACMR 8902774.**

U.S. Army Court of Military Review.

17 Oct. 1990.

Reconsideration Denied 4 Jan. 1991.

For Appellant: Captain Timothy P. Riley, JAGC, Captain Jay S. Eiche, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before FOREMAN, HAESSIG and HAGAN, Appellate Military Judges.

OPINION OF THE COURT

HAGAN, Judge: *

A military judge sitting as a general court-martial convicted the appellant, in accordance with his pleas, of two specifications of attempted robbery and an absence without leave, in violation of Articles 80 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 886 (1984). The approved sentence provides for a bad-conduct discharge, confinement for three years, and forfeiture of $300.00 pay per month for 36 months. The appellant contends that: (a) his conduct, with respect to the second specification alleging attempted robbery, did not amount to an overt act beyond mere preparation, and, thus, the plea to that specification was improvident; (b) the military judge erred by failing to delve into the affirmative defense of voluntary abandonment as applied to the charge of attempted robbery; (c) the appellant had voluntarily abandoned any attempted robberies, causing his pleas to those offenses to be im-

* Judge William R. Hagan took final action in this case prior to his reassignment.

provident; and, (d) the sentence is overly severe.

On 3 April 1989, the appellant went to a fast food restaurant in Augusta, Georgia. Before he entered the store, he prepared a handwritten note (now lost) that said, in effect, "Please be quiet and stand still. I have a gun and I won't hesitate to use it." The appellant approached a cashier, who asked if she could help him. The appellant replied that he was waiting for someone. A few moments later, the appellant said that he was ready to order but, instead, showed the note to the cashier, who read it. The appellant admitted during the plea inquiry that he intended the note to place the cashier in immediate fear of personal injury in order to obtain money. Interestingly, the cashier turned away and returned with the manager who did not know what was transpiring. The manager asked the accused what he needed, and the accused mumbled softly about what he was doing. The manager, who became frightened when the accused put his hand into his pocket, ran to the rear of the store to escape and summoned the police. As the manager fled, so did the appellant.

Shortly after this fumbled effort, the appellant went to a nearby convenience store with similar intention and result. Again, the appellant presented a handwritten note (also lost) to a cashier. This time, the appellant said to the cashier, "I could get in trouble if somebody saw this." The cashier agreed, but did nothing else. Abashed, the appellant left. Before he got to his car, the store manager called out to him and convinced him to return to the store. Local authorities arrested the appellant and confined him for almost two weeks, but eventually the case was turned over to the military, thus this court-martial and its appeal.

The appellant understandably relies upon the case of *United States v. Byrd*, 24 M.J. 286 (C.M.A.1987), in his claim of error with respect to both the overt act and the affirmative defense of voluntary abandonment.

■ The criminal offense of attempt requires an overt act beyond mere prepara-

tion. The difficulty comes in sorting among acts, to decide which are preparations and which are attempts. *Byrd*, 24 M.J. at 289–90. Chief Judge Everett commended to us the aid used by the Court of Appeals of the Second Circuit. Quoting that court, *Byrd* tells us that to be guilty of an attempt, a " 'defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime' and '[a] substantial step must be strongly corroborative of the firmness of the defendant's criminal intent.' " *Byrd*, 24 M.J. at 290.

■ We have little difficulty in finding from the record, in the appellant's testimony during the plea inquiry and from the stipulation of fact (Appellate Exhibit X), that with respect to both robbery specifications, conceiving the note was planning; writing it was merely preparation; displaying it to the cashier, however, was an act overt in a demonstrably classic sense. All furthered the commission of the attempted offense of robbery, and proffering the note strongly corroborates the firmness of appellant's criminal intent. The key is intent, not resolve. The appellant was weak and unable to carry through with his plan. His intent was, at the time, no less criminal despite his lack of will. Accordingly, we find that the appellant's assertion that his conduct did not amount to an overt act is meritless.

The assignments of error concerning the affirmative defense of voluntary abandonment give greater pause. Military law recognizes, albeit neither unanimously nor with clearly defined limits, the affirmative defense of voluntary abandonment. That is:

> Although there is authority to the contrary, a person who has performed an act which is beyond the stage of preparation and within the zone of attempt may nevertheless avoid liability for the attempt by voluntarily abandoning the criminal effort.

*Byrd*, 24 M.J. at 290–291, quoting 4 Wharton's Criminal Law § 748 (C. Torcia, 14th ed., 1981) (footnotes omitted).

The appellant urges us now to find that he had abandoned any attempted robbery in his abortive efforts that led to his conviction. The "defense has only been applied when an individual abandons his intended crime because of a change of heart; and it has not been allowed when the abandonment results from fear of immediate detection or apprehension." *Byrd*, 24 M.J. at 292. "Voluntary abandonment is not an affirmative defense to attempted criminal conduct where the actor's purposes were frustrated by external forces, such as fear of immediate detection or apprehension." *United States v. Miller*, 30 M.J. 999, 1000 (N.M.C.M.R.1990). "[A]bandoning a course of action is not voluntary when it is motivated 'by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose.'" *Miller*, 30 M.J. at 1002, quoting *Byrd*, 24 M.J. at 291.

Based upon the facts developed during the inquiry following the guilty plea and contained within the stipulation of fact, we find that the appellant ended his efforts to rob in both charged incidents when he saw that he was having no success in the enterprise. He did not quit because he had a change of heart about the evil of robbery, but because he found it personally difficult to carry out his clearly criminal intent. As pathetic as his efforts may seem, on the facts before us, the appellant intended to rob and failed. To lose heart is not to have a change of heart. To abandon the premises is not necessarily to abandon the enterprise. He hardly renounced the crime. *See United States v. Walther*, 30 M.J. 829 (N.M.C.M.R.1990). After his first abortive effort at the restaurant, the appellant drafted a new, "improved" note. That, too, failed, but we may and do reasonably infer that when the accused left the convenience store after his second failure, he may well have tried once again. So far as we know, only the intercession of the second store manager interfered with the appellant's continued, albeit pitifully futile, robbery attempts. Unlike the accused in *Walther*, our appellant did not abandon his attempt owing to any sense that his actions were wrong. Instead, here, outside causes, *i.e.*, unanticipated difficulties (the plan went awry); unexpected resistance (store employees refused to comply); and, circumstances which increased the likelihood that he would be detected or apprehended (an earlier failed attempt), all militate against, not reinforce, the defense of voluntary abandonment. *Walther*, 30 M.J. at 832.

But are the facts before us sufficient? Was the affirmative defense of voluntary abandonment raised during the providence inquiry? If so, the appellant's plea of guilty to the robbery specifications must be rejected unless the military judge inquired into it adequately and resolved the issue. *United States v. Byrd*, 24 M.J. 286, 293 (C.M.A.1987); *United States v. Allison*, 30 M.J. 546, 547 (A.C.M.R.1990).

The exchange between the appellant and the military judge during the guilty plea inquiry, in appropriate part, was:

MJ: Okay. So, at that point then, you decided not to go through with it?

ACC: That's correct, Your Honor, and I decided to leave at that point.

MJ: Now, that was when—I want to be sure I have these parties straight. That was when Ms. Evans came from the back of the store?

ACC: Yes, Your Honor, that's correct.

MJ: Okay. Do you agree though that, when you originally gave the note to Ms. Douglas, at that—at that point, you still intended to commit robbery? In other words ...

ACC: Yes, Your Honor.

MJ: ... if she had—if she'd have opened the cash register and given you money, you would have taken it?

ACC: Yes, Your Honor.

MJ: Okay. With regard to that matter then, I'm satisfied that there would have at least been an attempted robbery with regard to Angela Douglas because it appears the accused still intended to proceed at the time he gave her the note and she was placed in apprehension that some physical force might be applied to her person if she didn't comply with what

the note directed her to do. I don't know about Wanda M. Evans. If, by the time she got up front, the accused had decided to abandon his plan, then, conceivably, there may be a defense of abandonment with regard to the individual Wanda Evans, conceivably, but I don't think—I don't think that that's particularly critical. In other words, if there's an attempted robbery of one person, that's sufficient for an offense. It doesn't have to be any attempted robbery of more than one.

....

MJ: Well, let me ask you a couple of questions. You—you gave her the note and then she turned and went to the back of the store?

ACC: Right, Your Honor.

MJ: Do you agree that she apparently chose to go to the back of the store rather than open the cash register?

ACC: It was at that time I realized that I—I really couldn't go through with this particular act, and I had never committed a criminal act, sir.

MJ: Okay. But you do agree that, when you gave her the note, you intended that she give you money ...

ACC: Yes, sir, Your Honor, I do ...

MJ: ... that was the purpose of giving her the note?

ACC: ... I do agree. Yes, Your Honor.

MJ: I think I'm—I'm satisfied that the— that the acts prior to handing the cashier the note and the act of handing that cash (sic) are sufficient to make out the attempt. I think, at that point, an attempt was completed. The fact that—that she didn't do as directed and open the cash register, but instead, went to the back of the store, I think that it probably gave the accused time enough to realize what he was doing, and he, at that point, chose not to, but—on the other hand, if she'd have immediately opened the cash register and handed him money, I guess, at that point, we'd have had a robbery.

ACC: Yes, sir.

....

MJ: I see. Okay. Okay. Now, did you—and did you give that note to a lady at the check-out counter in the Lion— Food Lion?

ACC: The note was folded with the letters not being visible. I had it in my hand, walked up to her. As best that I can recall, Your Honor, I told her that, if I was to give her this note, I'd probably get myself in a lot of trouble. She then took the note out of my hand, read it, gave it back to me, and said, "Yes, you sure would get in some trouble." At that time, I said, "Well, I'd better not decide to go through with something like this," and proceeded to leave the store.

The stipulation of fact does not discuss appellant's thoughts or intent.

During the sentencing hearing the appellant made an unsworn statement. Asked whether he made any other efforts to get money from "the folks at McDonald's" after his initial attempt, the following colloquy ensued:

ACC: Well, I felt that, since they—it didn't really turn out, that they weren't going to respond the way I had anticipated, that that was about the extent that I was going to go. I turned around and decided I couldn't go any other ro—any other route.

DC: There's been some testimony in the stipulation of fact about the manager coming to the front of the store and her bending over to hear you. What were you telling her?

ACC: Basically, that I had given the cashier a note and that I really—really decided not to go through with this, and to just forget it.

We find that the plea inquiry was deficient in two respects. First, the military judge failed to elicit a sufficient factual predicate for the plea. Second, the military judge failed to resolve an inconsistency between the appellant's unsworn statement and the plea.

We have previously held that "it is not sufficient to secure an accused's acknowledgment of guilt in terms of legal conclusions" and that it is incumbent upon the military judge to "ask questions which elicit facts from which the military judge can

conclude that the legal standard has been met." *United States v. Duval*, 31 M.J. 650 (A.C.M.R.1990), citing *United States v. Goins*, 2 M.J. 458 (A.C.M.R.1975).

In the case before us the appellant consistently maintained, both during the plea inquiry and in his unsworn statement, that after he gave the note to the cashier and she turned and went to the back of the store he realized he couldn't go through with the robbery and left. Appellant also stated during the plea inquiry that after the cashier at Food Lion handed the note back to him, he told her "Well, I'd better not decide to go through with something like this," and left the store.

Appellant's statements certainly appear to assert that he voluntarily abandoned the enterprise because he had a change of heart. They also can be interpreted as asserting that the appellant abandoned the enterprise due to "fear of immediate detection or apprehension" since he was met with resistance in both instances. Unfortunately, the military judge failed to determine whether the appellant was asserting a change of heart or a fear of detention and apprehension and, thereby, put the issue of voluntary abandonment to rest.

Because the military judge failed to resolve the issue of voluntary abandonment, we hold that the appellant's pleas of guilty to the two attempted robberies were improvident.

The findings of guilty of Specifications 1 and 2 of Charge I are set aside. The remaining findings of guilty are affirmed. The sentence is set aside. A rehearing on Charge I and its two Specifications and the sentence may be ordered by the same or a different convening authority.

Senior Judge FOREMAN and Judge HAESSIG concur.

## NOTICE

Notice is hereby given that the Government's suggestion that the above-entitled case be heard by the Court sitting *en banc* has been considered and was not adopted.

Senior Judges FOREMAN and De GIULIO, and Judges HAESSIG, WERNER, GRAY, GRAVELLE, and VARO join in issuing this notice.

JOHNSTON, Judge, dissenting:

I dissent from the decision denying *en banc* reconsideration of *Rios*.

It is my view that the affirmative defense of voluntary abandonment was not adopted into military law by the decision in *United States v. Byrd*, 24 M.J. 286 (C.M.A. 1987). Because *Byrd* does not represent a clear recognition of the affirmative defense of voluntary abandonment in military law,[1] we should not feel compelled to apply it here. I share Judge Cox's concern about making substantive law on a guilty-plea record.

A substantive provision of the 1984 Manual for Courts–Martial [hereinafter MCM, 1984], which took effect after the case in *Byrd* arose, rejects voluntary abandonment as an affirmative defense in military law:

> For example, the accused could commit an overt act, *and then voluntarily decide not to go through with the intended offense.* An attempt would nevertheless have been committed, for the combination of a specific intent to commit an offense, plus the commission of an overt act directly tending to accomplish it, constitutes the offense of attempt. Failure to complete the offense, whatever the cause, is not a defense.

MCM, 1984, Part IV, para. 4c(2) (emphasis added).

Our Court concluded in *United States v. Valenzuela*, 15 M.J. 699, 701 (A.C.M.R. 1983) that "military law does not recognize such a defense." The holding in *Valenzuela* is consistent with a long history of military precedents that reject voluntary abandonment as an affirmative defense.[2]

---

1. Chief Judge Sullivan did not participate in the decision. Judge Cox refused to join the lead opinion in its adoption of the law of voluntary abandonment on a guilty-plea record. Therefore, the precedential value of that opinion is unclear.

2. Although a panel of the Navy–Marine Court of Military Review recently recognized voluntary

Paragraph 417 of the Manual for Courts-Martial, United States, 1921, rejected the doctrine in straightforward terms: "Voluntary abandonment of purpose after an act constituting an attempt is not a defense." The interpretation in the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, likewise rejected the defense: "[A]n accused is guilty of an attempt under the Uniform Code if he has committed acts requisite to constitute an attempt *even though of his own accord he desisted before the consummation of the intended offense.*" *Id.* at 249 (emphasis added).

The Analysis of MCM, 1984, para. 4c(2) again rejected voluntary abandonment citing *United States v. Emerson,* 16 C.M.R. 690 (A.F.B.R.1954). The *Emerson* court held that the attempt offense was completed after the overt act, and the accused's "self-serving declarations ... of repentance and intent not to commit the substantive offense, were immaterial to his innocence or guilt as his actions had passed beyond a locus poenitentiae which would acquit him of the offense charged." *Id.* at 698.

Absent explicit guidance from the Court of Military Appeals, we should not implicitly adopt a doctrine that has not been accepted generally in the federal courts. Although a few of the federal circuit courts have recognized the defense, apparently none have explicitly adopted it and several have rejected the doctrine or severely limited its application. *See, e.g., Fryer v. Nix,* 775 F.2d 979, 993 (8th Cir.1985) ("[o]nce ... an act [beyond mere preparation calculated to bring the desired result to fruition] is committed, the attempt is under way, and any subsequent termination, though voluntary, is not a defense."); *United States v. Joyce,* 693 F.2d 838 (8th Cir.1982) (evidence of an incomplete cocaine purchase insufficient to establish attempt; voluntary abandonment doctrine neither discussed nor adopted); *United States v. Bussey,* 507 F.2d 1096, 1098 (9th Cir.1974) ("[a] volun-

tary abandonment of an attempt which has proceeded well beyond preparation ... will not bar a conviction for the attempt."); *United States v. Jackson,* 560 F.2d 112 (2d Cir.1977) (voluntary abandonment doctrine quoted in *dicta* in review of an attempted bank robbery; the doctrine was not an issue in the case), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977); *United States v. McDowell,* 705 F.2d 426 (11th Cir.1983) (voluntary abandonment doctrine not raised; even if a valid defense, not present on facts of an attempted cocaine possession transaction), *reh'g denied,* 714 F.2d 106 (11th Cir.1983); *United States v. Rivera–Sola,* 713 F.2d 866 (1st Cir.1983) ("reverse sting" operation by government agents in attempted purchase of drugs; no discussion or adoption of the doctrine); *United States v. Williams,* 704 F.2d 315 (6th Cir.1983) (fifth amendment voice identification case involving attempted purchase of cocaine; discussion of voluntary abandonment limited to a "Cf." citation to *Joyce* —doctrine not discussed or adopted), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *United States v. Bagnall,* 907 F.2d 432 (3d Cir.1990) (Mansmann, J., dissenting) (majority, who found no attempt violation and did not reach voluntary abandonment issue, should have applied the defense to resolve case); *United States v. Dworken,* 855 F.2d 12 (1st Cir. 1988) (abandonment defense acknowledged but not adopted; 1st Circuit disagrees with the 2nd and 8th Circuits' analysis of attempt/abandonment cases).

I also have significant reservations about this court apparently adopting an affirmative defense that would completely excuse criminal conduct even though all elements of an attempt crime have been proven beyond a reasonable doubt. In my view, law, order, and discipline require that soldiers not be allowed to commit acts sufficient to constitute an attempt and then be excused for their criminal conduct.

abandonment as an affirmative defense in *United States v. Walther,* 30 M.J. 829 (N.M.C.M.R. 1990), and limited its application in *United States v. Miller,* 30 M.J. 999 (N.M.C.M.R.1990),

those opinions fail to address the Manual provision *supra,* and assume the defense is available without discussing the substantial body of law to the contrary.

Even if we disregard the significant legal and policy issues that should be resolved, the defense was not available on the facts of this case.

An accused can not assert voluntary abandonment after the attempt offense is consummated by taking the last proximate step necessary for the commission of the attempt. *See Fryer*, 775 F.2d at 994 (once an act is committed that shows the accused intended to complete the crime, the crime of attempt is complete and "later termination, though voluntary, is irrelevant."); *Bussey*, 507 F.2d at 1098 ("[a] voluntary abandonment of an attempt which has proceeded well beyond preparation ... will not bar a conviction for attempt."); *People v. Dillon*, 34 Cal.3d 441, 194 Cal.Rptr. 390, 396, 668 P.2d 697, 703 (Cal.1983) ("when the acts are such that any reasonable person would believe a crime is about to be consummated absent an intervening force, the attempt is under way, and a last-minute change of heart by the perpetrator should not be permitted to exonerate him."). In this case, passing the robbery notes to the store clerks was the last proximate step necessary for completion of the robbery.

The affirmative defense also was not available in this case because appellant's abandonment was not complete and voluntary. *See*, ALI Model Penal Code § 5.01(4) (1962), *reprinted in* ALI *Model Penal Code and Commentaries*, 296–97 (1985). As the panel noted in its decision of this case, "outside causes, *i.e.*, unanticipated difficulties (the plan went awry); unexpected resistance (store employees refused to comply); and, circumstances which increased the likelihood that he would be detected or apprehended (an earlier failed attempt), all militate against, not reinforce, the defense of voluntary abandonment." Maj. op. at 503.

The judge elicited responses that showed that the appellant had taken the last proximate step necessary for the robbery. The appellant's own testimony indicated he intended to rob at the time he passed the robbery notes to his victims. Because the facts show that, as a matter of law, a possible affirmative defense was not raised, the guilty plea should not be held to be improvident merely because the military judge did not inquire in great detail into the appellant's reasons for leaving the crime scene. Therefore, voluntary abandonment was not applicable and additional guilty plea inquiry was not required for a defense that was unavailable as a matter of law. *See United States v. Timmins*, 45 C.M.R. 249 (C.M.A.1972).

In this case it is unnecessary to direct the military judge to inquire into the defense of voluntary abandonment to determine whether appellant really intended to go through with his crime. If this court determines that sufficient questions are raised about appellant's state of mind on the day he chose to try his hand at robbery, then the solution is to focus the new plea inquiry on the intent element of attempted robbery.[3] In ordering the rehearing in *Rios*, this Court need not have apparently adopted a new affirmative defense.

Acting Chief Judge JOHNSON, Senior Judge NAUGHTON, and Judge CORRIGAN join in this dissent.

---

3. The colloquy between the military judge and appellant highlights the issues:

> MJ: I see. Okay. Okay. Now, did you—and did you give that note to a lady at the check-out counter in the Lion—Food Lion?
> ACC: The note was folded with the letters not being visible. I had it in my hand, walked up to her. As best that I can recall, Your Honor, I told her that, if I was to give her this note, I'd probably get myself in a lot of trouble. She then took the note out of my hand, read it, gave it back to me, and said, "Yes, you sure would get in some trouble." At that time, I said, "Well, I'd better not decide to go through with something like this," and proceeded to leave the store.