**UNITED STATES**

v.

**Frederick E. WALTHER, Jr., 161 64 5416, Mess Management Specialist Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 89 2309.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 6 April 1989.

Decided 28 Feb. 1990.

Reconsideration Denied 23 March 1990.

LT Robert E. Wallace, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ALBERTSON, WILLEVER and JONES, JJ.

WILLEVER, Judge:

We recognize voluntary abandonment as an affirmative defense to attempted criminal conduct in this case, following the rationale of *United States v. Byrd*, 24 M.J. 286 (C.M.A.1987). Pursuant to his pleas, appellant was found guilty of violations of the Uniform Code of Military Justice (UCMJ), Articles 80 and 109, 10 U.S.C. §§ 880, 909, by a military judge sitting as a special court-martial. After being convicted of the willful destruction of another sailor's automobile window and attempted larceny of an in-dash car stereo, appellant was sentenced to confinement for 30 days, forfeitures of

$450.00 pay per month for two months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

■ We specified three issues for briefing by appellate counsel.[1] The briefs were both helpful and prompt. The first issue dealt with the providence of appellant's guilty plea to attempted larceny of a car stereo. During the providence inquiry, appellant described how he broke the window of another sailor's parked car on base, intending to steal the radio inside. Once inside the car, appellant stated, he realized he was doing wrong and changed his mind. He had done nothing to physically remove the radio from the car. Nothing in the record indicates that appellant's failure to proceed with the theft was motivated by increased probability of detection or apprehension, or due to any outside cause. Appellant's answers during the providence inquiry raised the issue of whether, upon entering the automobile after breaking its window, he voluntarily abandoned his effort to steal the car stereo inside. We find his answers raised the affirmative defense of voluntary abandonment and are therefore inconsistent with his pleas of guilty to the charge and specification alleging attempted larceny. These answers required that either the military judge make further inquiry or set aside those pleas.

Following the precept of the Model Penal Code and various non-military Federal cases, the affirmative defense of voluntary abandonment in connection with attempts is recognized in military justice. *United States v. Byrd*, 24 M.J. 286, 291–92 (C.M.A. 1987) (and authorities cited therein). In *Byrd*, the accused plead guilty to a charge of attempted distribution of marijuana based on the facts that he had accepted ten dollars from an undercover agent and journeyed to a liquor store where marijuana could be purchased. These were found not to be "overt acts" sufficient to establish the accused's guilt of attempted distribution of marijuana, for he had not gone beyond mere preparation to commit the crime but instead changed his mind once inside the liquor store. These facts, brought forth through a stipulation of fact and the accused's answers during the providence inquiry, were held to be inconsistent with the accused's plea of guilty. *Byrd*, 24 M.J. at 290 (and authorities cited therein). But also in *Byrd*, appellant argued that *"even if* his acts would otherwise have constituted an attempt, he was insulated from liability by his voluntary abandonment of the intended crime before its completion," and Chief Judge Everett agreed. *Byrd*, 24 M.J. at 288. (Emphasis added.)[2]

In the case before us, the military judge saw the issue, but he and counsel apparently missed the change in the law set forth in *Byrd*. At pages 13 and 14 of the record the following is pertinent:

MJ: All right. Now, what prevented you from actually taking the radio?

---

1.  I

SHOULD THE MILITARY JUDGE, ACCORDING TO UNITED STATES V. BYRD, 24 M.J. 286 (C.M.A.1987), HAVE MADE FURTHER INQUIRY REGARDING WHETHER THERE WAS VOLUNTARY ABANDONMENT OF INTENT TO STEAL THE RADIO PRIOR TO ACCEPTING PLEA OF GUILTY WHERE ACCUSED SAYS HE "CHANGED HIS MIND" ABOUT STEALING THE RADIO AFTER BREAKING INTO THE CAR BUT BEFORE TRYING TO REMOVE IT FROM THE DASHBOARD?

II

SHOULD THE MILITARY JUDGE HAVE REOPENED THE PROVIDENCE INQUIRY WHEN THE ACCUSED STATED IN HIS UNSWORN STATEMENT IN EXTENUATION THAT HE WAS DRUNK AT THE TIME OF THE OFFENSES?

III

SHOULD THE MILITARY JUDGE HAVE CONSOLIDATED CHARGES I AND II AND THE SPECIFICATIONS THEREUNDER AS MULTIPLICIOUS FOR FINDINGS?

2.  Chief Judge Everett's opinion forged new law, at least for the military, in this area. Judge Sullivan did not participate in the opinion and Judge Cox concurred in the result, commenting that he was "very impressed with the Chief Judge's learned opinion" but expressing reservations about making substantive law based on a guilty-plea record. *Byrd* came after *United States v. Gugliotta*, 23 M.J. 905 (NMCMR 1987); our opinion here conforms with Chief Judge Everett's reasoning and is therefore contrary to the earlier NMCMR *Gugliotta* per curiam opinion.

ACCUSED: I had changed my mind and realized that what I was doing was wrong, sir.

MJ: All right. At what point did you change your mind?

ACCUSED: After I broke the window and got inside the car.

MJ: All right. But at that point in time you hadn't done anything to have actually physically removed the radio?

ACCUSED: No, sir.

MJ: We'll be in recess, counsel.

The court recessed at 0934 hours, 6 April 1989.

The court was called to order at 1019 hours, 6 April 1989.

MJ: The court will come to order. The record will reflect that all parties present when the court recessed are once again present. Now, there were several 802 conferences during the course of the recess between myself, Lieutenant Hansen, and Lieutenant Brill. Initially, of course, during the first 802 conference, I expressed my concern that I could not properly accept the plea of guilty as to the alleged attempt based on what I had elicited thus far from Seaman Apprentice Walther, and based on my understanding of the law as it related to attempts. However, I indicated I was willing to research the matter further and urged counsel to do likewise.

In the course of looking into this matter, there—basically, there's one case that seems to govern the—at least what I've heard thus far on whether or not it would be proper to continue the providence inquiry, and that's the case—I guess it's *United States versus Stugliotta* [sic], at 23 MJ 905, which seems to be right on point. That case does not appear to be overruled by any subsequent precedent.

Unfortunately, it does not appear to be based on any other precedent either which is the difficulty, but it is specifically based, apparently, on the court's reading of the Manual for Courts–Martial, specifically, Part IV, Paragraph 4 dealing with Article 80 attempts, and more particularly, subparagraph (c)(2)....

Failure to complete the offense, whatever the cause, is not a defense. All right. Well, that's clearly the language on which the Navy Court of Military Review was relying in their decision, and would seem to indicate that, in fact, that if Seaman Apprentice Walther had a change of heart for whatever reasons, if the act of getting inside the automobile through the means that he's already described for me was sufficient to constitute a direct movement toward the commission of the offense, that would—and if the requisite intent was present, that would constitute the offense of attempt. Now, I'm compelled to follow that language in the Manual for Courts–Martial and the decision of the Navy–Marine Corps Court of Military Review, and accordingly, I will—unless other matters come up, I will accept the plea of guilty, assuming that there are no other matters raised as a matter of defense as we talk about this offense further.

I would note, however, just in passing, that there's no legal basis for the change to the Manual for Courts–Martial. If you read the analysis on why—what Paragraph 2 says, or subparagraph (c)(2) to be more correct, says, they cite as authority for that position the previous Manual for Courts–Martial 1969. It did not have the language in there. It's specifically noted that the changed circumstance had to be some unforeseen circumstance or unexpected circumstance that prevented the commission of the offense.

It did not talk about voluntary withdrawal. That language is new in the new manual, and there is no case authority for that proposition, and there has been no statutory change to attempt in the Code. That was purely an addition by the drafters of the Manual for Courts–Martial, and they cite no authority for doing so. However, I'll allow the appellate courts to ponder that issue.

Thus, the military judge was on point in spotting the problem, but he and counsel apparently missed the *Byrd* case where Chief Judge Everett indeed had pondered that issue.

In this case, appellant's breaking of the locked car's window was a necessary preliminary step to theft of the car stereo and constituted an overt act which directly tended to accomplish his admitted unlawful purpose. He made no physical effort to remove the stereo. Appellant's breaking the window, however, strongly corroborated his criminal intent to steal the stereo, and was a direct movement toward commission of the crime. For him to abandon his criminal intent is to renounce the crime of attempted larceny which was arguably completed when he broke the window with the intent to steal the stereo.

While it may be inconsistent to hold that a completed crime can be renounced with no criminal liability inuring to the malefactor, and that one who has committed an act which is beyond the stage of preparation and within the zone of attempt may avoid liability for the attempt by voluntarily abandoning the criminal effort, there are strong public policy reasons for not imposing criminal liability upon appellant for attempted larceny in this case. We borrow from *Byrd:*

> According to the drafters of the Model Penal Code, the rationale for recognizing this defense is as follows:
>
>> On balance, it is concluded that renunciation of criminal purpose should be a defense to a criminal attempt charge because, as to the early stage of an attempt, it significantly negatives dangerousness of character, and as to the latter stages, the value of encouraging desistance outweighs the net dangerousness shown by the abandoned criminal effort.
>
> (Citation omitted.) Responding to critics, the drafters of the Model Penal Code observed:
>
>> It is possible, of course, that the defense of renunciation of criminal purpose may add to the incentives to take the *first* steps toward crime. Knowledge that criminal endeavors can be undone with impunity may encourage preliminary steps that would not be undertaken if liability inevitably attached to every abortive criminal undertaking that proceeded beyond prep-

> aration. But this is not a serious problem. First, any consolation the actor might draw from the abandonment defense would have to be tempered with the knowledge that the defense would be unavailable if the actor's purposes were frustrated by external forces before he had an opportunity to abandon his effort. Second, the encouragement this defense might lend to the actor taking preliminary steps would be a factor only where the actor was dubious of his plans and where, consequently, the probability of continuance was not great.
>
> (Citation omitted.)
>
> In various Federal cases the doctrine of voluntary abandonment seems to have been recognized either expressly or implicitly (footnote omitted). Various state legislatures and state courts have also accepted this defense (footnote omitted). However, the defense has only been applied when an individual abandons his intended crime because of a change of heart; and it has not been allowed when the abandonment results from fear of immediate detection or apprehension....

*Byrd,* 24 M.J. at 291–92.

Appellant's answers during the providence inquiry indicate a free and voluntary abandonment of his attempt to steal the car stereo before he put that attempt into final execution. There is no indication from the record that he abandoned that attempt due to an outside cause; indeed, the only indication is that he abandoned his attempt owing to his own sense that it was wrong. The absence of any other cause for this abandonment, such as unanticipated difficulties, unexpected resistance, or circumstances which increased the likelihood that he would be detected and apprehended, reinforces the potential defense of voluntary abandonment. In the case before us, as in *Byrd:*

> [H]is answers during the providence inquiry do suggest a change of heart and a voluntary abandonment of his criminal venture. Thus, those answers were inconsistent with the guilty pleas and

would require either that the military judge make further inquiry or set aside the pleas.

*Byrd,* 24 M.J. at 293. Therefore, appellant's pleas of guilty to attempted larceny are improvident, and the findings of guilty of Charge II and its Specification are set aside and Charge II and its Specification are dismissed.

▪ Regarding the second issue, however, the military judge was under no obligation to reopen the providence inquiry when, during appellant's unsworn statement in extenuation, he stated that he was intoxicated at the time of these incidents. Appellant's unsworn statement indicates that he was capable both of forming his criminal intent while intoxicated and of deciding to dispense with his plan to steal the car stereo after he had smashed the window. Because we have dismissed the attempted larceny charge and specification, the question of whether the charges alleging destruction of property and attempted larceny are multiplicious for findings is moot.

▪ We note that in this case there are irregularities regarding post-trial and appellate rights. The military judge instructed appellant and trial defense counsel to read a standard form rights statement and discuss post-trial appellate rights "[a]fter trial." R. 34. The military judge did not inquire whether the accused understood his rights before court adjourned. The better practice, so all are sure appellant understands his post-trial and appellate rights, is the on-the-record procedure approved by the Court of Military Appeals in *United States v. McIntosh,* 27 M.J. 204, 207 (C.M.A.1988). However, in this case appellant exercised his rights and we find the error harmless. *United States v. Hill,* 27 M.J. 293 (C.M.A.1988).

▪ On a post-trial matter, we note that the court-martial order, in this case signed by the convening authority, incorrectly reflects that appellant plead guilty to Charge III, a violation of Article 95, 10 U.S.C. § 895, resisting apprehension, when in fact he plead not guilty to and was found not guilty of Charge III and the single specifi-

cation thereunder. However, the special court-martial order correctly indicates a plea and finding of not guilty to the Specification, and the staff judge advocate's recommendation correctly recites the pleas, so we are convinced that the convening authority was not misled by this apparent clerical error. We find this error harmless, too. *Id.* A new court-martial order is directed.

We have examined the record of trial and the appellate responses to the specified issues, and have concluded that the remaining findings of guilty are correct in law and fact. Upon reassessment we are convinced that—even in the absence of the error in entering findings of guilty of the attempted theft of the car radio—the military judge would not have adjudged a lesser sentence for this willful destruction of another sailor's property in light of the entire record, which includes appellant's prior nonjudicial punishments. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986). Accordingly, the sentence, as approved on review below, is affirmed.

Senior Judge ALBERTSON and Judge JONES concur.