**436**

UNITED STATES, Appellant,

v.

Manuel RIOS, Private, U.S.
Army, Appellee.

No. 66,111.

CM 8902774.

U.S. Court of Military Appeals.

Argued April 25, 1991.

Decided Sept. 30, 1991.

For the Accused: *Captain Jay S. Eiche*
(argued); *Colonel Robert B. Kirby* and
*Lieutenant Colonel Russell S. Estey* (on
brief); *Captain Timothy P. Riley.*

For the United States: *Captain Randy
V. Cargill* (argued); *Colonel Alfred F. Ar-
quilla, Lieutenant Colonel Daniel J.
Dell'Orto, Captain Timothy W. Lucas* (on
brief).

*Opinion of the Court*

EVERETT, Senior Judge:

In August and September 1989, Private
Manuel Rios was tried at Fort Gordon,
Georgia, by a general court-martial consist-
ing of officer and enlisted members. Con-
sistent with his pleas, which had been en-
tered pursuant to a pretrial agreement, he
was convicted of two separate attempted
robberies on April 3, 1989, and absence
without leave (3 days), in violation of Arti-
cles 80 and 86, Uniform Code of Military
Justice, 10 USC §§ 880 and 886, respective-
ly. His sentence included a bad-conduct
discharge, 3 years' confinement, and forfei-
ture of $300.00 pay per month for 36
months. The convening authority ap-
proved the sentence on November 20, 1989.

On October 17, 1990, the Court of Mili-
tary Review set aside the findings of guilty
to the two attempted-robbery specifications
and set aside the sentence.* It provided
that a rehearing on these offenses and the
sentence may be ordered. 32 MJ 501.

The Government then filed a petition for
reconsideration and suggested that it be

---

* The Court of Military Review affirmed the re-      maining findings of guilty.

considered by the Court of Military Review sitting *en banc.* Seven judges of the court denied the petition, but four judges dissented from denial of a rehearing *en banc.* *Id.* at 505. Thereafter, pursuant to Article 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989), the Acting Judge Advocate General of the Army certified to this Court these two issues for review:

## I

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW WHEN IT HELD THAT VOLUNTARY ABANDONMENT IS A DEFENSE TO AN ATTEMPT CHARGED UNDER ARTICLE 80, UCMJ.

## II

ASSUMING THE DEFENSE OF VOLUNTARY ABANDONMENT APPLIES IN THE MILITARY, [WHETHER] THE ARMY COURT OF MILITARY REVIEW ERRED, AFTER FINDING FACTS THAT WOULD, AS A MATTER OF LAW, NEGATE THE DEFENSE, BY DETERMINING THAT THE [ACCUSED'S] PLEAS OF GUILTY WERE IMPROVIDENT.

## I

### A

The essential facts are not in dispute and have been summarized by the court below:

On 3 April 1989, the appellant went to a fast food restaurant in Augusta, Georgia. Before he entered the store, he prepared a handwritten note (now lost) that said, in effect, "Please be quiet and stand still. I have a gun and I won't hesitate to use it." The appellant approached a cashier, who asked if she could help him. The appellant replied that he was waiting for someone. A few moments later, the appellant said that he was ready to order but, instead, showed the note to the cashier, who read it. The appellant admitted during the plea inquiry that he intended the note to place the cashier in immediate fear of personal injury in order to obtain money. Interestingly, the cashier turned away and returned with the manager who did not know what was transpiring. The manager asked the accused what he needed, and the accused mumbled softly about what he was doing. The manager, who became frightened when the accused put his hand into his pocket, ran to the rear of the store to escape and summoned the police. As the manager fled, so did the appellant.

Shortly after this fumbled effort, the appellant went to a nearby convenience store with similar intention and result. Again, the appellant presented a handwritten note (also lost) to a cashier. This time, the appellant said to the cashier, "I could get in trouble if somebody saw this." The cashier agreed, but did nothing else. Abashed, the appellant left. Before he got to his car, the store manager called out to him and convinced him to return to the store. Local authorities arrested the appellant and confined him for almost two weeks, but eventually the case was turned over to the military, thus this court-martial and its appeal.

32 MJ at 502.

### B

Before the Court of Military Review, Rios presented these contentions as to the validity of his two attempted-robbery guilty pleas: "(a) [H]is conduct, with respect to the second specification alleging attempted robbery" of the convenience store, was mere preparation "not amount[ing] to an overt act ... and, thus, his guilty plea to that specification was improvident; (b) the military judge erred by failing to delve into the affirmative defense of voluntary abandonment as applied to the charge of attempted robbery; and (c)" because he "had voluntarily abandoned any attempted robberies, ... his pleas to those offenses [were] improvident." *Id.* at 501.

As to Rios' first contention, the court below disagreed, stating:

We have little difficulty in finding from the record, in the appellant's testimony during the plea inquiry and from the stipulation of fact (Appellate Exhibit X), that with respect to both robbery specifications, conceiving the note was planning; writing it was merely preparation; displaying it to the cashier, however, was an act overt in a demonstrably classic sense. All furthered the commission of the attempted offense of robbery, and proffering the note strongly corroborates the firmness of appellant's criminal intent. The key is intent, not resolve. The appellant was weak and unable to carry through with his plan. His intent was, at the time, no less criminal despite his lack of will. Accordingly, we find that the appellant's assertion that his conduct did not amount to an overt act is meritless.

*Id.* at 502.

In deciding that Rios' guilty pleas to the attempted robbery charges had been improvidently accepted by the military judge in view of the possible existence of the affirmative defense of voluntary abandonment, the Court of Military Review referred to this passage in the providence inquiry:

MJ: Okay. So, at that point then, you decided not to go through with it?

ACC: That's correct, Your Honor, and I decided to leave at that point.

MJ: Now, that was when—I want to be sure I have these parties straight. That was when Ms. Evans came from the back of the store?

ACC: Yes, Your Honor, that's correct.

MJ: Okay. Do you agree though that, when you originally gave the note to Ms. Douglas, at that—at that point, you still intended to commit robbery? In other words . . .

ACC: Yes, Your Honor.

MJ: . . . if she had—if she'd have opened the cash register and given you money, you would have taken it?

ACC: Yes, Your Honor.

MJ: Okay. With regard to that matter then, I'm satisfied that there would have

at least been an attempted robbery with regard to Angela Douglas because it appears the accused still intended to proceed at the time he gave her the note and she was placed in apprehension that some physical force might be applied to her person if she didn't comply with what the note directed her to do. I don't know about Wanda M. Evans. If, by the time she got up front, the accused had decided to abandon his plan, then, conceivably, there may be a defense of abandonment with regard to the individual Wanda Evans, conceivably, but I don't think—I don't think that that's particularly critical. In other words, if there's an attempted robbery of one person, that's sufficient for an offense. It doesn't have to be any attempted robbery of more than one.

\* \* \*

MJ: Well, let me ask you a couple of questions. You—you gave her the note and then she turned and went to the back of the store?

ACC: Right, Your Honor.

MJ: Do you agree that she apparently chose to go to the back of the store rather than open the cash register?

ACC: *It was at that time I realized that I—I really couldn't go through with this particular act, and I had never committed a criminal act, sir.*

MJ: Okay. But you do agree that, when you gave her the note, you intended that she give you money . . .

ACC: Yes, sir, Your Honor, I do . . .

MJ: . . . that was the purpose of giving her the note?

ACC: . . . I do agree. Yes, Your Honor.

MJ: I think I'm—I'm satisfied that the—that the acts prior to handing the cashier the note and the act of handing that cash (sic) are sufficient to make out the attempt. *I think, at that point, an attempt was completed. The fact that—that she didn't do as directed and open the cash register, but instead, went to the back of the store, I think that it probably gave the accused time enough*

*to realize what he was doing, and he, at that point, chose not to, but—on the other hand, if she'd have immediately opened the cash register and handed him money, I guess, at that point, we'd have had a robbery.*

ACC: Yes, sir.

\*    \*    \*

MJ: I see. Okay. Okay. Now, did you—and did you give that note to a lady at the check-out counter in the Lion—Food Lion?

ACC: The note was folded with the letters not being visible. I had it in my hand, walked up to her. *As best that I can recall, Your Honor, I told her that, if I was to give her this note, I'd probably get myself in a lot of trouble. She then took the note out of my hand, read it, gave it back to me, and said, "Yes, you sure would get in some trouble." At that time, I said, "Well, I'd better not decide to go through with something like this," and proceeded to leave the store.*

*Id.* at 503–04 (emphasis added).

Furthermore, the court noted that "[t]he stipulation of fact does not discuss appellant's thoughts or intent." *Id.* However, the court observed that, "during the sentencing hearing," Rios "had made an unsworn statement"; and when he was "asked whether he made any other efforts to get money from 'the folks at McDonald's' after his initial attempt," this exchange occurred:

ACC: *Well, I felt that, since they—it didn't really turn out, that they weren't going to respond the way I had anticipated, that that was about the extent that I was going to go. I turned around and decided I couldn't go any other ro—any other route.*

DC: There's been some testimony in the stipulation of fact about the manager coming to the front of the store and her bending over to hear you. What were you telling her?

ACC: *Basically, that I had given the cashier a note and that I really—really*

*decided not to go through with this, and to just forget it.*

*Id.* at 504 (emphasis added).

Relying on these portions of the trial record, the court agreed with Rios' other contentions about the affirmative defense of voluntary abandonment. It cited our decision in *United States v. Byrd*, 24 MJ 286 (CMA 1987), that "[m]ilitary law recognizes, albeit neither unanimously nor with clearly defined limits, the affirmative defense of voluntary abandonment." 32 MJ at 502. Furthermore, the court ruled that the military judge's guilty-plea inquiry into the attempted robbery specifications

was deficient in [these] two respects:
First, the military judge failed to elicit a sufficient factual predicate for the plea. Second, the military judge failed to resolve an inconsistency between the appellant's unsworn statement and the plea.

*Id.* at 504. The court further explained that "it is not sufficient to secure an accused's acknowledgment of guilt in terms of legal conclusions" and that it is incumbent upon the military judge to "ask questions which elicit facts from which the military judge can conclude that the legal standard has been met." *United States v. Duval*, 31 MJ 650 (ACMR 1990), citing *United States v. Goins*, 2 MJ 458 (ACMR 1975).

32 MJ at 504–05.

However, the court pointed out that
[i]n the case before us the appellant consistently maintained, both during the plea inquiry and in his unsworn statement, that after he gave the note to the cashier and she turned and went to the back of the store he realized he couldn't go through with the robbery and left. Appellant also stated during the plea inquiry that after the cashier at Food Lion handed the note back to him, he told her "Well, I'd better not decide to go through with something like this," and left the store."

The court then wrote:
Appellant's statements certainly appear to assert that he voluntarily abandoned the enterprise because he had a

change of heart. They also can be interpreted as asserting that the appellant abandoned the enterprise due to "fear of immediate detection or apprehension" since he was met with resistance in both instances. Unfortunately, the military judge failed to determine whether the appellant was asserting a change of heart or a fear of detention and apprehension and, thereby, put the issue of voluntary abandonment to rest.

Finally, it concluded that, "[b]ecause the military judge failed to resolve the issue of voluntary abandonment, we hold that the appellant's pleas of guilty to the two attempted robberies were improvident." *Id.* at 505.

## II

In *United States v. Byrd, supra* at 291, we referred to the Model Penal Code's explanation of the affirmative defense of voluntary abandonment:

(4) *Renunciation of Criminal Purpose.* When the actor's conduct would otherwise constitute an attempt under Subsection (1)(b) or (1)(c) of this Section, it is an affirmative defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. The establishment of such defense does not, however, affect the liability of an accomplice who did not join in such abandonment or prevention.

Within the meaning of this Article, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.

ALI Model Penal Code § 5.01(4)(1962), reprinted in ALI *Model Penal Code and Commentaries* [hereafter *Commentaries*] 296–97 (1985).

Elsewhere in *Byrd,* we observed that the drafters of the Model Penal Code had further clarified that "any consolation the actor might draw from the abandonment defense would have to be tempered with the knowledge that the defense would be unavailable if the actor's purposes were frustrated by external forces before he had an opportunity to abandon his effort." 24 MJ at 291, *quoting* Comment, ALI Model Penal Code § 5.01(4), *Commentaries, supra* at 359–60. Thereafter, we concluded that

the defense has only been applied when an individual abandons his intended crime because of a change of heart; and it has not been allowed when the abandonment results from fear of immediate detection or apprehension, *see United States v. Jackson,* 560 F.2d 112 [ (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977) ], the decision to await a better opportunity for success; or inability to complete the crime, *see United States v. McDowell,* 714 F.2d 106 (11th Cir.1983); *United States v. Rivera-Sola,* 713 F.2d 866 (1st Cir.1983).

24 MJ at 292.

■ We agree with the Government that there are sufficient uncontested facts in this case—contained either in the guilty-plea responses, the stipulation of fact, or Rios' unsworn sentencing statement—to demonstrate, *as a matter of law,* that the affirmative defense of voluntary abandonment would be unavailable to Rios as to either attempt offense.

In the first attempted robbery, indeed, there is no dispute anywhere in the record that, shortly after Rios had attempted to rob the fast-food restaurant, he drafted a second note and proceeded to try to rob a nearby convenience store. This circumstance *alone* shows that Rios had experienced no change of heart about committing robbery. He hardly had renounced the sin of robbery if he proceeded to rob a second store. Instead, he was even more deter-

mined to effectuate a successful robbery that same day.

According to the Model Penal Code, "Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim." *United States v. Byrd, supra* at 291, *quoting* ALI Model Penal Code § 5.01(4), *Commentaries, supra* at 297. Even if, at some point during the attempted robbery of the fast-food restaurant, Rios had realized that he could not go forward with the robbery, the affirmative defense of voluntary abandonment still was unavailable to him because his abandonment was never *complete.* Moreover, part of Rios' unsworn sentencing statement makes clear that, in desisting from the intended robbery of the fast-food store, he was motivated by external "circumstances, not present ... at the inception of the" attempt, which he had not "anticipated." According to his statement:

> Well, I felt that, since they—it didn't really turn out, that they weren't going to respond the way I had anticipated, that that was about the extent that I was going to go. I turned around and decided I couldn't go ... any other route.

Thus, the abandonment defense clearly would have been unavailable to Rios in the case of the fast-food restaurant.

Ironically, in connection with the subsequent attempt to rob the nearby convenience store, the same colloquy which the court below interpreted to assert that Rios had voluntarily abandoned the robbery shows, instead, that this defense was unavailable to Rios in this situation as well:

> MJ: I see. Okay. Okay. Now, did you— and did you give that note to a lady at the checkout counter in the Lion—Food Lion?
>
> ACC: The note was folded with the letters not being visible. I had it in my hand, walked up to her. *As best that I can recall, Your Honor, I told her that, if I was to give her this note, I'd probably get myself in a lot of trouble. She then took the note out of my hand, read it, gave it back to me, and said, "Yes, you sure would get in some trouble." At that time, I said, "Well, I'd better not decide to go through with something like this," and proceeded to leave the store.*

32 MJ at 504 (emphasis added). This discussion between the military judge and Rios shows that the accused did not abandon his attempt to rob the convenience store because he believed that his actions were wrong. Instead—like the events of the earlier attempt—it shows that his objective to rob the store was frustrated by external and unanticipated difficulties: The convenience store's cashier had refused to cooperate with the robbery in progress, returned the note to Rios, and told him that he "would get in some trouble."

We discern no inconsistency between the guilty pleas and evidence that Rios desisted from the second crime because the cashier would not cooperate with him. As a matter of law, the abandonment defense was unavailable to Rios because his purpose to rob the convenience store was frustrated by external forces before he had an opportunity to abort his effort and by Rios' own lack of skill as a robber.

Because the facts of record make clear that Rios was not entitled to the affirmative defense of voluntary abandonment as to either attempted robbery, his guilty pleas thereto were provident even though the military judge did not inquire in more detail into his reasons for leaving the crime scene. Indeed, since, as a matter of law, the defense of voluntary abandonment was inapplicable in either situation, an additional guilty-plea inquiry by the military judge was not required. *See United States v. Timmins,* 21 USCMA 475, 45 CMR 249 (1972). Accordingly, the Court of Military Review erred in directing the military judge to inquire into the defense of voluntary abandonment.

We answer the second certified question in the affirmative, so we need not address the first question.

## III

The decision of the United States Army Court of Military Review ordering a rehearing as to specifications 1 and 2 of Charge I is reversed; the findings of guilty thereon are reinstated. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review under Article 66, Uniform Code of Military Justice, 10 USC § 866.

Chief Judge SULLIVAN and Judge COX concur.