LAWRENCE, Judge:
Appellant pled guilty to attempted carnal knowledge, carnal knowledge, and indecent acts upon a female under the age of 16 years, in violation of Articles 80, 120, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, and 934. He was sentenced by the military judge to confinement for 5 years, forfeiture of $300.00 pay per month for 60 months, reduction to pay grade E-l, and a dishonorable discharge. The convening authority approved the sentence.
After receipt of the briefs of the parties, we specified the issue[1] whether appellant’s responses during the providence inquiry reasonably raised the affirmative defense of voluntary abandonment as to appellant’s conviction for attempting carnal knowledge. After receipt of the briefs in response to the specified issue, oral argument was held on that issue at Camp Pendleton, California.
I. Facts
Appellant pled guilty to attempted carnal knowledge by placing “his erect penis next to the vaginal area of [victim] and attempting to insert [his] penis into her vagina.” The guilty pleas were accompanied by a stipulation of fact. According to appellant’s statements made during the providence inquiry and the stipulation, appellant was alone with his 12-year-old stepdaughter in the living room of their house. Appellant asked the girl to undress, but she refused. Appellant undressed himself, approached her, and began to fondle her breasts and vaginal area over and underneath her clothing and underwear. Appellant then took off her clothes and lay on top of her. He placed his erect penis against her vaginal area and attempted to insert it. Appellant said that immediately after physical contact occurred he “withdrew from the attempt.” According to him, no penetration resulted. The military judge asked, “Now, why were you not able to effect penetration? Was there some circumstance which prevented you from consummating the act?” Appellant responded, “Yes, sir, my conscious (sic).” He said that he “suddenly changed his mind” just after the “physical contact” and “just backed off.” Appellant said that he “understood the significance of the timing.”
After this offense, appellant entered therapy for sexual child abuse and also attended therapy sessions with his wife. After months of therapy and about 15 months after the attempted carnal knowledge with his stepdaughter, he initiated a similar incident of molestation during which carnal knowledge actually occurred.
II. Issue and Holding
At issue is whether the facts contained in the providence inquiry reasonably raise the defense of voluntary abandonment such that the military judge’s failure to inquire into the defense must result in our setting aside the guilty pleas. We hold that after an attempted offense against the person has progressed into its last stages and the victim has suffered substantial harm, the subsequent voluntary abandonment of the attempt is not a defense to that crime. For this reason, as a matter of law, the defense was not raised during the providence inquiry in this case. Accordingly, the military judge was not required to explain it to appellant on the record or elicit facts to establish its unavailability to appellant. Finding no merit in the assignments of error, we affirm the findings and sentence as approved on review below.
*853 III. Adoption of The Defense of Voluntary Abandonment in Military Law
“The traditional common law view is that abandonment cannot be a defense to attempt.” Paul R. Hoeber, The Abandonment Defense to Criminal Attempt and Other Problems of Temporal Individuation, 74 Calif.L.Rev. 377, 377 (1986) (citing numerous commentators at 378 n. 1) [hereinafter Hoeber]; see Wayne R. Lafave & Austin W. Scott, Criminal Law 521 (2d ed. 1986) [hereinafter LaFave & Scott]; Rollón M. Perkins & Ronald N. Boyce, Criminal Law 654-55 (3d ed. 1982) [hereinafter Perkins & Boyce]; William L. Clark & William L. Marshall, A Treatise on the Law of Crimes 229 (6th ed. 1958); Justin Miller, Handbook of Criminal Law 100 (1934). Thus, as with any other offense, once the crime is complete subsequent repentance or remorse does not relieve that perpetrator of criminal liability. Abandonment of criminal purpose was relevant, however, as it bore on the actor’s intent or whether his prior acts amounted to mere preparation. LaFave & Scott at 519-20.
In some jurisdictions, however, the statutory definition of attempt suggests the defense by defining an attempt “in terms of one who engages in acts toward the commission of a crime ‘but fails in the perpetration thereof or is prevented or intercepted in executing such crime.’ ” LaFave & Scott at 521. Because voluntary withdrawal generally is not considered to be synonymous with failure to achieve an end and the concept of voluntary abandonment generally excludes being prevented or intercepted in executing the crime, such statutory definitions of attempt imply the existence of voluntary abandonment as a defense. Some statutory basis for the defense is present in the UCMJ in which an attempt is defined as “an act ... amounting to more than mere preparation and tending,
even though failing, to effect its commission.” Article 80(a), UCMJ, 10 U.S.C. § 880(a). This language is scant support for recognizing the defense in military law, however, in light of Manual for Courts-Martial provisions prior to the Code.[2] Furthermore, even in jurisdictions employing such language to define an attempt, courts have rejected the defense. LaFave & Scott at 521.
Taking into account those jurisdictions in which the statutory definition of attempt offers some support for the defense, most commentators nevertheless contend that the defense has been rejected by the great majority of the federal and state courts that have considered it in this country. Id. at 521-22; Daniel L. Rotenberg, Withdrawal As a Defense to Relational Crimes, 1962 Wis.L.Rev. 596, 598; Herbert Wechsler et ah, The Treatment of Inchoate Cñmes in the Model Penal Code of the Ameñcan Law Institute: Attempt, Solicitation, & Conspiracy, 61 Colum.L.Rev. 571, 615 (1961) [hereinafter Wechsler], The drafters of the American Law Institute (ALI) Model Penal Code took exception to this conclusion and contended that when assault eases were excluded “the prevailing view ... [is] in favor of allowing voluntary desistance as a defense.” Model Penal Code § 5.01 Comment, reprinted in ALI Model Penal Code and Commentaries 357 (1985) [hereinafter Commentaries ]; Wechsler at 615. Although “the American cases cited in support for the most part contain such statements in dictum or in concurring or dissenting opinion,” LaFave & Scott at 521, in the 1960’s the ALI adopted the affirmative defense of voluntary abandonment to an attempt.
In United States v. Byrd, 24 M.J. 286 (1987), Chief Judge Everett concluded after analyzing the authorities[3] that “the affirma *854 tive defense of voluntary abandonment must be recognized in military justice.” Id. at 293. Judge Sullivan did not participate, and Judge Cox concurred in the result, specifically declining to join in the adoption of the defense. Nevertheless, in United States v. Walther, 30 M.J. 829 (N.M.C.M.R.1990), and United States v. Miller, 30 M.J. 999 (N.M.C.M.R. 1990), this Court acknowledged the existence of the defense based on Byrd. In United States v. Rios, 33 M.J. 436 (C.M.A.1991), the Court of Military Appeals again discussed the defense as propounded in the Model Penal Code and concluded that the providence inquiry did not reasonably raise it. The Court specifically declined to decide the first certified question which was whether voluntary abandonment was a defense to an attempt. During oral argument in this case, the government emphasized that only Chief Judge Everett adopted the defense in Byrd and that the Court in Rios specifically declined to hold that the defense existed in military law. The government therefore requested that we reexamine Walther and overrule that decision.
In United States v. Schoof, 37 M.J. 96 (C.M.A.1993), however, the Court asserted that in Rios “a unanimous Court acknowledged the availability of abandonment as an affirmative defense to a completed attempt.” Id. at 103. The Court further indicated that the formulation of the defense is that set forth in the Model Penal Code. Thus, although we perceive substantial merit in the government’s contention that the defense should not exist in military law, we are now bound to follow Schoof and recognize the defense substantially as it is set out in the Model Penal Code.
IV. Application of the Defense
Applying the defense to the instant facts is not an easy task for two reasons. First, contrary to Chief Judge Everett’s contention in Byrd that the defense had been adopted specifically or by implication in the federal courts, in the great majority of cases the federal court simply stated that even if the defense existed, it was not raised by the facts of the ease.[4] Second, the states which have adopted the defense have generally altered the Model Penal Code proposal to some degree. Model Penal Code § 5.01 Comment, reprinted in Commentaries at 360 n. 279. Because of the paucity of federal and military cases that have actually applied the defense to a given set of facts, the defense is “without *855 clearly defined limits.” United States v. Collier, 36 M.J. 501, 510 (A.F.C.M.R.1992).
Under the Model Penal Code formulation of the defense, the actor must have “abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.” The rule states that
renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor’s course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.
Model Penal Code § 5.01(4), reprinted in Commentaries at 296-97. “[Ojnce the defendant has introduced evidence that the abandonment was complete and voluntary, the prosecution has the burden ... of proving beyond a reasonable doubt that he merely decided to postpone his criminal conduct until a more advantageous time.” Model Penal Code § 5.01 Comment, reprinted in Commentaries at 358-59.
A. Renunciation of Criminal Purpose
We first consider whether the providence inquiry indicates that any renunciation of criminal purpose by appellant was complete. As noted above, the Model Penal Code precludes the defense if the renunciation of criminal purpose “is motivated by a decision to postpone the criminal conduct until a more advantageous time.” Model Penal Code § 5.01(4), reprinted in Commentaries at 297. Thus, a temporary or contingent renunciation of criminal purpose will not suffice. Model Penal Code § 5.01 Comment, reprinted in Commentaries at 358. An illustration of this principle is found in Rios. Rios demonstrated a weak commitment to rob a fast-food store by presenting himself to a salesperson and saying that if he was to give her the note he would probably be in a lot of trouble. The woman took the note, read it, and agreed. The accused withdrew from this feeble attempt and left the store. Immediately thereafter, he made out a second note and attempted a similar robbery of a convenience store. The Court concluded that the second attempt established that his abandonment of the first robbery was not a complete renunciation of his criminal purpose.
In the case before us, about 15 months after his first attempt at carnal knowledge, appellant embarked on a similar criminal course of conduct that lead to completed carnal knowledge. Appellant stated that he withdrew from his criminal endeavor due to a change of heart and conscience. His entry into and participation in months of therapy evidence a substantial intent to abandon any such activity in the future. Nothing said by appellant during the providence inquiry suggests that he withdrew from the attempt simply to postpone his criminal purpose to a more advantageous time. Thus, we cannot conclude that his renunciation was insincere or incomplete when he abandoned his criminal purpose during the earlier incident. Although appellant returned to his criminal purpose many months later, based on all of these factors, the fact of the subsequent crime does not as a matter of law foreclose the defense to appellant.
B. Offenses Against the Person in Which Substantial Physical Harm Has Been Done
We turn to the second and more difficult question whether the defense should be recognized in cases involving offenses against the person in which the victim suffers substantial harm prior to or during the attempt. The Model Penal Code states that the prevailing view is in favor of allowing the defense only if assault cases are not considered. Id. at 357. The drafters acknowledge that the “bulk of decisions squarely denying the defense involved assaults, and these are distinguishable. Whether they are correct need not be decided here; it is enough to note that something in the way of a substantive offense had been committed and immunity was ac *856 cordingly withheld.” Id. at 358. Of the cases cited which deny the defense in assault eases, the drafters note that some of them “involved assaults with intent to rape a female under the age of consent.” Id. at 358 n. 275.
The commentators also generally question the existence of the defense in such cases. Some advocate the defense while noting that there are “definite limits, of course.”
Attempted murder cannot be purged after the victim has been wounded, no matter what may cause the plan to be abandoned. And probably the same is true after a shot has been fired with intent to kill. On the other hand, although a criminal plan has proceeded far enough to support a conviction of criminal attempt, it would be sound to recognize the possibility of a locus penitentiae so long as no substantial harm has been done and no act of danger committed.
Perkins & Boyce at 656. Others write:
Assuming a defense of voluntary abandonment, does there come a point at which it is too late for the defendant to withdraw? Obviously there must be, for it would hardly do to excuse the defendant from attempted murder after he had wounded the intended victim or, indeed, after he had fired and missed.
LaFave & Scott at 522-23.
The Model Penal Code does not expressly foreclose the defense in cases of offenses against the person in which the attempt is far advanced and substantial harm to the victim has occurred. Compelling reasons for barring the defense in such cases not only are set forth in decisional law as described above by the commentators but also derive from the underlying rationale for the Model Penal Code’s expansive definition of an attempt and the drafters’ stated reasons for recognizing the defense.
The modern reason for sanctioning attempts “is not to deter the commission of completed crimes, but rather to subject to corrective action those individuals who have sufficiently manifested their dangerousness.” 2 LaFave & Scott, Substantive Criminal Law § 6.2,18 (1986). The Model Penal Code accepted this reason. One of the major results of the Model Penal Code proposal is to “extend the criminality of attempts by ... drawing the line between attempt and noncriminal preparation further away from the final act; the crime becomes essentially one of criminal purpose implemented by an overt act strongly corroborative of such purpose.” Model Penal Code, Article 5, Inchoate Crimes, Introduction, reprinted in Commentaries at 295. Under the Model Penal Code, “[t]he primary purpose of punishing attempts is to neutralize dangerous individuals and not to deter dangerous acts.” Model Penal Code § 5.01 Comment, reprinted in Commentaries at 323.
The pertinent focus is therefore on the actor’s mind rather than on his actions or the proximity of the criminal endeavor to its completion. The Model Penal Code definition of an attempt specifically rejects a requirement that there be “a dangerous proximity to success” or that the act “reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation.” See Perkins & Boyce at 617, 635. The Model Penal Code adopts a broad definition of an attempt that includes acts or omissions that constitute “a substantial step in a course of conduct planned to culminate in [the] commission of the crime” and which are “strongly corroborative of the actor’s criminal purpose.” Model Penal Code § 5.01(1), (2), reprinted in Commentaries at 295-96. Such acts may include only “reeonnoitering the place contemplated for the commission of the crime” or “possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances.” Id. at 296.
This focus on the actor’s dangerousness is the reason for rejecting a mere reduction in penalty based on an abandonment rather than a complete defense. The drafters explain that
with respect to the question of dangerousness, it seems that once liability is established, sanctions should be linked to neutralizing the actor’s dangerousness and determined on a broad basis with reference to the requirements of the particular of *857 fender. An automatic reduction in the case of abandonment would be inconsistent with this approach.
Model Penal Code § 5.01 Comment, reprinted in Commentaries at 362.
Under the broad definition of an attempt in the Model Penal Code, there may therefore be markedly earlier or later stages in an attempt. The basis for the defense of voluntary abandonment as to the earlier stages is that “renunciation of criminal purpose tends to negative dangerousness,” or stated more strongly, renunciation “significantly negatives dangerousness of character.” Id. at 359-60. Obviously, simply reeonnoitering a place involves no physical harm or even danger to the intended victim and may not otherwise be contrary to law. Abandonment of such an attempt significantly negatives dangerousness of the actor’s character. Unquestionably, in this case appellant’s attempted vaginal penetration did not occur at an early stage of the attempt. Further, the providence inquiry indicates that prior to the attempted intercourse appellant committed indecent acts with the 12-year-old child, an offense carrying a maximum punishment that includes a dishonorable discharge and confinement for 7 years. Certainly, the rationale for recognizing the defense as to an early stage of an attempt is absent here; the attempt was in an extremely late stage and appellant’s dangerousness had been established conclusively.
Thus, an examination of the Model Penal Code’s second basis for adopting the defense comes into play.
The second reason, for allowing renunciation of criminal purpose as a defense to an attempt charge is to provide actors with a motive for desisting from their criminal designs, thereby diminishing the risk that the substantive crime will be committed. While under the proposed subsection such encouragement is held out at all stages of the criminal effort, its significance becomes greatest as the actor nears his criminal objective and the risk that the crime will be complete is correspondingly high. At the very point where abandonment least influences a judgment as to the dangerousness of the actor — where the last proximate act has been committed but the resulting crime can still be avoided — the inducement to desist stemming from the abandonment defense achieves its greatest value.
Id. at 359. Thus, as to the later stages of an attempt, “the value of encouraging desistance outweighs the net dangerousness shown by the criminal effort. And, because of the importance of encouraging desistance at the final stages of an attempt, the defense is allowed even when the last proximate act has occurred but the criminal result can be avoided.” Id. at 360.
Certainly, this second basis for allowing the defense must be the primary one in this case. It is also the least convincing. Hoeber addresses the unpersuasiveness of this rationale.
But the crux of the matter is whether the defense will encourage abandonment in any event. The claim presupposes that some attempters will be aware of the defense. Assuming this awareness, the question is whether any of these attempters will abandon because of the defense. The possibility of avoiding attempt liability is not by itself a motive for abandoning an attempt. So the claim must be that there are attempters who, though they have a motive to abandon, would nevertheless decide not to abandon, except that they know abandonment is a defense. Although this might happen, we have no good reason to believe it would be anything other than very unusual. We may hope that some attempters will abandon their attempts because of the defense, but the claim that they actually will is an article of faith.
Hoeber at 377 (emphasis in original). Certainly, in this case, appellant’s abandonment had nothing to do with his awareness of the existence of the defense.
One commentator examined the defense of voluntary abandonment in light of European experience, especially that of Germany whose judicial system has recognized the defense for over 100 years. He too rejected the argument that promising immunity from punishment encourages attempters to desist.
*858 [T]he claim that this promise is an effective inducement needs far more proof than any of its proponents have offered. Though German scholars and judges once advanced this argument, they now recognize it as naive. Even if it were empirically sound, this argument would not help us understand why there is a disposition to recognize the defense of abandonment in cases of attempts but no parallel inclination to recognize an inducement to return stolen property.
George P. Fletcher, Rethinking Criminal Law 186 (1978) (footnotes omitted). If an attempt is carried into its latest stages to the point where substantial harm is done to the victim, refusing to impose criminal sanctions on one who abandons his intended criminal endeavor in complete ignorance of the defense is simply a windfall to the actor. If the theory of the defense is to provide an incentive to desist, “it would seem that, no motivation should be adequate for the defense unless it includes an interest in enjoying the law’s promise of immunity.” Id. at 197.
Thus, the underlying policy considerations set out in the Model Penal Code for recognizing the defense fail to provide a persuasive reason for doing so in this case. The attempt had progressed to its latest stage. Appellant’s acts of disrobing his daughter and placing his erect penis against her vaginal area proved his dangerousness so conclusively that his failure to complete the offense does not significantly negative that dangerousness. These acts were done to appellant’s young stepdaughter and constituted substantial harm to her. Appellant undoubtedly knew nothing about the existence of the defense in military law; certainly its existence provided no inducement for his failure to complete the crime of carnal knowledge.
Thus, we hold that as a matter of law the defense of voluntary abandonment was not reasonably raised in the providence inquiry. Accordingly, the military judge was not required to explain the defense to appellant or elicit additional facts about it from appellant to establish that it was not present.
The assignments of error[5] are without merit. The findings and sentence as approved on review below are affirmed.
Senior Judge JONES and Senior Judge REED concur.

. WHETHER APPELLANT’S RESPONSES DURING THE PROVIDENCE INQUIRY REGARDING CHARGE I AND ITS SPECIFICATION RAISED THE AFFIRMATIVE DEFENSE OF VOLUNTARY ABANDONMENT OF THE ATTEMPT TO COMMIT CARNAL KNOWLEDGE, AND, IF SO, WHETHER THE MILITARY JUDGE'S FAILURE TO INQUIRE INTO SUCH A DEFENSE SHOULD RESULT IN SETTING ASIDE THE FINDINGS OF GUILTY TO THAT CHARGE AND SPECIFICATION. See United States v. Byrd, 24 MJ. 286 (C.M.A.1987); United States v. Walther, 30 M.J. 829 (N.M.C.M.R.1990); United States v. Rios, 32 M.J. 501 (A.C.M.R. 1990); record at 40-41.

. In United States v. Byrd, 24 M.J. 286, 288-89 (C.M.A.1987), Chief Judge Everett acknowledged that the 1921 Manual for Courts-Martial, U.S. Army, provided that "[vjoluntary abandonment of purpose after an act constituting an attempt is not a defense.” The 1928 and 1949 Manuals do not repeat this language, however, they contain no language suggesting the availability of the defense.

. The Chief Judge’s citations in support of the defense are at best unconvincing, if not completely inapposite, as Judge Johnston established in the Army Court of Military Review decision in United States v. Rios, 32 M.J. 501, 506 (A.C.M.R. 1990) (Johnston, J., dissenting from order denying reconsideration en banc), rev'd in part and remanded, 33 M.J. 436 (C.M.A.I991). Listing Chief Judge Everett's cited cases by federal judicial circuit, we note that none supports his position.
First Circuit. Chief Judge Everett cited United States v. Rivera-Sola, 713 F.2d 866 (1st Cir. *854 1983), as having adopted the defense, yet in United States v. Dworken, 855 F.2d 12 (1st Cir. 1988), the First Circuit later said that "[ajbandonment is a defense that we have acknowledged but never firmly adopted or rejected as a basis for reversal.” 855 F.2d at 20.
Second Circuit. United States v. Jackson, 560 F.2d 112 (2nd Cir.), cert. denied, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977), was cited, however, the issue in Jackson was whether substantial steps had been taken by the defendant that corroborated the firmness of his criminal intent, in other words, whether an attempt occurred at all. 560 F.2d at 118-19. The Court did not adopt the defense.
Sixth Circuit. United States v. Williams, 704 F.2d 315 (6th Cir.1983), also cited, addressed whether the defendant had progressed from preparation to overt acts. After telephoning to inquire if drugs could be purchased, Williams appeared at the prospective seller's residence with a revolver and $3,400 and was promptly arrested. No facts are mentioned in the decision that reasonably raise the defense of voluntary abandonment, and aside from a citation to United States v. Joyce, 693 F.2d 838, 841-42 (8th Cir.1982), to support finding an attempt, no mention was made of an affirmative defense.
Eighth Circuit. Joyce, also cited by the Chief Judge, referred only to the Model Penal Code definition of an attempt, not to the defense of abandonment. The Eighth Circuit, itself, subsequently pointed out that Joyce had not attempted to possess cocaine because he "had not taken substantial steps towards carrying out his intent.” United States v. Reeves, 730 F.2d 1189, 1196 n. 6 (8th Cir.1984). Thereafter, the Eighth Circuit also wrote that once an act amounting to more than mere preparation takes place, "the attempt is under way, and any subsequent termination, though voluntary, is not a defense.” Fryer v. Nix, 775 F.2d 979, 993 (8th Cir. 1985).
Ninth Circuit. The Chief Judge also cited United States v. Bussey, 507 F.2d 1096 (9th Cir. 1974), but in that decision, the Ninth Circuit actually stated that "a voluntary abandonment of an attempt which has proceeded well beyond mere preparation as here, will not bar a conviction for the attempt.” Id. at 1097.
Eleventh Circuit. United States v. McDowell, 714 F.2d 106 (11th Cir.1983), also cited, is inapposite as well. As Judge Johnston noted in his dissent in Rios, the voluntary defense doctrine was not raised in McDowell. The Court said only that even if it were a valid defense, the facts in the case did not raise it.

. See note 1, supra.

. I. A SENTENCE WHICH INCLUDES FIVE YEARS UNSUSPENDED CONFINEMENT AND FORFEITURES OF $300 PAY PER MONTH IS INAPPROPRIATELY SEVERE.
II. APPELLANT’S TRIAL DEFENSE COUNSEL WAS INEFFECTIVE IN PRESENTING PRE-SENTENCING EVIDENCE.