LAWRENCE, Judge:
Consistent with his pleas, appellant was found guilty of attempting to steal merchandise from a vending machine, conspiring to commit larceny, wrongfully selling military property, wilfully damaging the glass case of a vending machine, stealing numerous items and money, unlawfully entering a storage shed, and receiving stolen property, in violation of Articles 80, 81,108,109, 121, 130, and 134, Uniform Code of Military Justice *916 (UCMJ), 10 U.S.C. § 880, 881, 908, 909, 921, 930, and 934. He was sentenced to confinement for 5 months, reduction to pay grade E-l, forfeiture of $500.00 pay per month for 5 months, and a bad-conduct discharge. The convening authority approved the sentence but, in accordance with the pretrial agreement, suspended confinement in excess of 90 days.
Providence Inquiry
During the providence inquiry into the attempt to steal merchandise from the vending machine, appellant said that while he and another sailor were working they became hungry. They had no money, however, there was a vending machine containing food in the area. They conceived the idea of breaking the glass and taking food from the machine. The following colloquy occurred:
ACC: ... And so we started to drill a hole through the glass so we could stick a piece of wire in to drop down the food. While I drilled, he looked — looking out to see if anybody was coming, and then he did some drilling and I’d look out. I tried it again and the glass broke. We said, well, forget this, now that the glass broke we called the Navy Exchange and the Navy police so that they could come there and see that the glass was broken, and we didn’t take anything out of the machine at all.
MJ: The glass broke as you were drilling it?
ACC: Yes, ma’am.
MJ: And what stopped you from taking the food out of there?
ACC: We realized it was a bad idea, what we were doing, and we didn’t want to do it any longer.
MJ: Were you afraid the glass was going to damage the food?
ACC: No, ma’am.
MJ: Were you afraid somebody was going to catch you?
ACC: Not really, ma’am.
MJ: You just decided you didn’t want to take the food out?
ACC: Yes, ma’am.
Record at 17-18. The military judge then elicited appellant’s concession that his acts amounted to more than mere preparation. Appellant said that they did attempt to obtain the food. The colloquy continued:
MJ: Was this, in fact, the last thing “we” would have had to do before “we” actually took the food out?
ACC: Yes, ma’am.
MJ: If I (sic) hadn’t stopped, is this the next thing to taking the food out? You’ve broken the glass by drilling a hole in it, is that correct?
ACC: Yes, ma’am. When the glass broke, it like all shattered. It was still within itself. It didn’t fall down. It still stayed in place.
MJ: Could you have reached in and taken food?
ACC: No, ma’am.
MJ: You would have had to do a little bit more?
ACC: Yes, ma’am.
MJ: But you still think that the act was an actual part of — it amounted to an attempt to steal the food?
ACC: Yes, ma’am.
Record at 20-21.
Specified Issue and Holding
Based on the foregoing, we specified the following issue for briefing by the parties:
WHETHER APPELLANT’S RESPONSES DURING THE PROVIDENCE INQUIRY REGARDING CHARGE I AND ITS SPECIFICATION RAISED THE AFFIRMATIVE DEFENSE OF VOLUNTARY ABANDONMENT OF THE ATTEMPT TO STEAL MERCHANDISE FROM THE VENDING MACHINE, AND, IF SO, WHETHER THE MILITARY JUDGE’S FAILURE TO INQUIRE INTO THE DEFENSE SHOULD RESULT IN SETTING ASIDE THE FINDINGS OF GUILTY OF THAT CHARGE AND SPECIFICATION? See United States v. Byrd, 24 M.J. 286 (C.M.A.1987); United States v. Walther, 30 M.J. 829 (N.M.C.M.R.1990); *917 United States v. Rios, 32 M.J. 501 (A.C.M.R.1990); Record at 17-22.
We hold that appellant’s responses do not raise the defense of voluntary abandonment of the attempt to steal the food, accordingly, the military judge was not required to explain the defense to- appellant or elicit additional facts to establish that the defense was not present.

Rationale

In United States v. Schoof, 37 M.J. 96 (C.M.A.1993), the Court of Military Appeals recognized “abandonment as an affirmative defense to a completed attempt.” Id. at 103. The Court indicated that the parameters of the defense are those contained in the Model Penal Code. In United States v. Smauley, 39 M.J. 853 (N.M.C.M.R.1994), we applied the provisions of the Model Penal Code in determining whether the appellant’s responses during the providence inquiry raised the defense of voluntary abandonment of an attempt to commit carnal knowledge and found that the defense was not raised. In deciding whether appellant’s responses during the providence inquiry in this case raise the defense, we look again to the Model Penal Code provisions themselves and then to the guidance provided in Smauley.
Under the Model Penal Code, in order to avail himself of the defense, the actor must have “abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.” Model Penal Code § 5.01(4), reprinted in ALI Model Penal Code and Commentaries 296-97 (1985) [hereinafter Commentaries]. The Model Penal Code states that
renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor’s course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose.
Id at 297. The Comment to the subsection states that “the- abandonment of the criminal effort must originate with the actor, and not be influenced by external circumstances that increase the probability of detection or that make more difficult the accomplishment of the criminal purpose.” Model Penal Code § 5.01 Comment, reprinted in Commentaries at 358.
The Court of Military Appeals in United States v. Rios, 33 M.J. 436 (C.M.A.1991), arguably extended the admonition contained in the Comment. Rios attempted to rob a fast-food store by giving a cashier a threatening note. The cashier unexpectedly turned away and returned with the manager who was unaware of what was occurring. When Rios reached into his pocket, the manager became alarmed and ran to the back of the store to call the police. Rios ran away. He then attempted to rob a convenience store, yet after he gave a cashier a similar note she failed to give up any money and simply agreed with Rios that such a note could get him in a lot of trouble. Again, Rios gave up and left the store. The Court noted Rios’ statement that in both incidents the cashiers did not respond the way he anticipated. The Court found that Rios’ “objective to rob the store was frustrated by external and unanticipated difficulties,” Id. at 441, that is, the cashiers’ lack of cooperation. The Court also noted that Rios’ plan was frustrated by his “own lack of skill as a robber.” Id.
We conclude that Rios makes the defense of voluntary abandonment unavailable if the criminal venture is frustrated by any circumstance that was not present or apparent when the actor began his criminal course of conduct that makes the accomplishment of the criminal purpose more difficult. Rios indicates that circumstance includes the actor’s inability to carry out the scheme as planned. We agree that withdrawal due to inability cannot be said to be truly voluntary.
That the glass in the vending machine shattered unexpectedly distinguishes this case from United States v. Walther, 30 M.J. 829 (N.M.C.M.R.1990), wherein Walther attempted to steal a ear radio by breaking the locked car’s window to gain entry into the interior. The Court found that the “breaking of the locked car’s window was a neces *918 sary preliminary step to theft of the car stereo ...” Id. at 832. The broken window was in no way unanticipated or unexpected; it was simply part of the original plan to steal the car stereo.
In this case, appellant said that he and his cohort intended to steal the food by drilling a small hole in the glass of the vending machine and hooking food with a wire to make it fall into the trough from which it could be obtained. Apparently, the two wei'e unaware that glass may shatter when a hole is drilled in it; in any event, they were not sufficiently skillful to be able to drill the hole without shattering the glass. It was this unanticipated occurrence that prompted their conclusion that continuing in the endeavor would be a “bad idea” and resulted in the abandonment of their plan to steal the food. Thus, we conclude on this basis that the defense of voluntary abandonment was unavailable to this appellant.
Additionally, as we discussed in Smauley, renunciation of criminal purpose is recognized as an affirmative defense in the Model Penal Code because in the early stages of an attempt it “significantly negatives dangerousness of character,” Model Penal Code § 5.01 Comment, reprinted, in Commentaries at 359-60, and in the later stages of an attempt it is an inducement to desist in the criminal course of conduct. The record in this case shows that appellant committed numerous larcenies prior to the date of his attempt to steal from this vending machine. About 4 hours before appellant attempted to obtain food from this vending machine, he broke into a video game machine and a different vending machine in order to steal money and food. Record at 92. About 2 weeks after these incidents, appellant stole electrical wire which was military property of the United States. These facts establish that appellant had been engaged in an on-going course of larcenous conduct prior to attempting to steal from the vending machine and that this course of criminal conduct continued after the attempt. Nothing about this abandonment negatives the dangerousness of appellant’s character or remotely suggests sincere repentance or a change of heart. Clearly his desisting from this attempt was not due to any renunciation of stealing in general. We conclude, therefore, that the renunciation was not complete, rather it was no more than a temporary withdrawal from a particular attempted theft to await a more advantageous target for his larcenous impulse.
Smauley indicates a potential second basis for concluding that the defense was unavailable to appellant. In Smauley, the attempt to commit carnal knowledge had progressed to its latest stage, and the youthful victim had suffered substantial harm in the form of indecent acts prior to Smauley’s withdrawal from his attempt. We concluded that the rationale for recognizing the defense after the. actor had proceeded to the latest stage of the attempt was unconvincing and that the defense should be foreclosed if withdrawal occurs at a late stage in the attempt after substantial harm to the victim has occurred.
In this case, appellant admitted that if the hole had been drilled successfully all that remained to complete the theft was to insert the wire, hook the food, and remove it from the vending machine. The attempt was well beyond mere preparation — the plan had proceeded to the very threshold of accomplishing the theft. Furthermore, the drilling resulted in actual damage to the vending machine in the amount of $88. Appellant pled and was found guilty of the wilful damage of the vending machine based on this incident, an offense carrying a maximum punishment that includes a bad-conduct discharge and confinement for 1 year. Even if appellant abandoned the attempt after the glass shattered, his actions had already made him liable for an offense that carried a greater maximum punishment than would an attempt to steal food valued at less than $100 or even the actual theft of such food.
Whatever the merit of recognizing voluntary abandonment at the latest stages of an attempt in order to induce desistence from the course of conduct, as we questioned in Smauley, there is little motive to withdraw from an attempt in order to escape criminal liability for it when the actor’s conduct already constitutes a more serious crime than does the attempt itself. In Walther, however, we held that the defense was raised when, after breaking a car window, appellant en *919 tered the vehicle with intent to steal the radio but had a change of heart before he began to remove it from the dashboard. The decision does not indicate the monetary cost of the damage to the window or the value of the radio, however, based on our common knowledge we surmise that the maximum punishment for wilfully breaking the window was the same as for attempting to steal the radio. Because we conclude that the defense is unavailable in this case due to the unanticipated shattering of the vending machine glass, we need not decide whether the holding of Walther should be reexamined.
Accordingly, the findings and sentence as approved on review below are affirmed.
Senior Judge JONES and Senior Judge REED concur.